13 CIV 6760

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| |
|---|
| TOSHIBA CORPORATION, |
| Plaintiff, |
| v. |
| CDI MEDIA, INC. |
| Defendant. |



**COMPLAINT**

Plaintiff Toshiba Corporation ("Toshiba"), by and through its attorneys, Quinn Emanuel

Urquhart & Sullivan, LLP, as and for its Complaint herein, alleges as follows:

### NATURE OF THE DISPUTE

1.     This is an action for damages arising out of the willful breach by CDI Media, Inc.

("CDI Media") of a patent license agreement (the "License Agreement") issued by Toshiba,

under authorization of the DVD Patent Licensing Group (described below), to make and

distribute certain DVD products.  As more fully detailed below, CDI Media has entirely failed to

satisfy its obligations under the License Agreement to submit royalty reports and pay royalties

due.  Accordingly, Toshiba brings this action seeking royalties and interest owed by CDI Media

under the express terms of that agreement.

### THE PARTIES

2.     Plaintiff Toshiba is a Japanese corporation, having its principal place of business

at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan.

3.     On information and belief, defendant CDI Media is a Utah corporation having its

principal place of business at 2323 South 3600 West, Salt Lake City, Utah 84119.

1

## JURISDICTION AND VENUE

4.      This Court has jurisdiction under 28 U.S.C. § 1332(a)(2), as plaintiff is a Japanese corporation and defendant is a Utah corporation having its principal place of business in Salt Lake City, Utah, and the matter in controversy exceeds the sum or value of $75,000.

5.      This Court has personal jurisdiction over CDI Media because CDI Media expressly consented to jurisdiction in this judicial district.  The parties expressly agreed in Section 6.4 of the License Agreement to submit to the jurisdiction of this Court the resolution of all disputes between them arising out of or in connection with the interpretation or execution of that agreement:

> 6.4      All disputes between the parties hereto arising out of or in connection with the interpretation or execution of this Agreement shall be finally settled by the competent courts of federal or state courts located in the county of New York in the state of New York, and each of the parties to this Agreement hereby submits to the jurisdiction of such courts for the resolution of such disputes and waives any objection that it may now or hereafter have to the venue of any such action or proceeding in such courts or to the convenience or inconvenience of conducting or pursuing any action or proceeding in any such court.

6.      Venue in this judicial district is proper under 28 U.S.C. § 1391.

## FACTS GIVING RISE TO THIS ACTION

7.      Toshiba is the authorized licensor for a group of companies (the "DVD Patent Licensing Group") that are leading developers of DVD technology and formats and own numerous patents essential for DVD products.  The DVD Patent Licensing Group currently consists of:  Hitachi Consumer Electronics Co., Ltd. (successor to Hitachi, Ltd.); JVC KENWOOD Corporation (successor to Victor Company of Japan, Ltd.); Mitsubishi Electric Corporation; Panasonic Corporation (formerly Matsushita Electric Industrial Co., Ltd.); Samsung Electronics Co., Ltd.; Sanyo Electric Co., Ltd.; Sharp Corporation; Toshiba Corporation; and

2

Warner Bros. Home Entertainment Inc. (successor to Warner Home Video Inc. and Time Warner Inc.).

***Toshiba Enters Into a License Agreement with CDI Media***

8.      Under authorization of the members of the DVD Patent Licensing Group, Toshiba entered into the License Agreement with CDI Media, effective as of April 1, 2003, as amended by Letter Agreement signed by CDI on May 12, 2003.  A true and accurate copy of the License Agreement, as amended, is annexed hereto as <u>Exhibit A</u>.

9.      Under certain terms and conditions, the License Agreement granted CDI Media a non-exclusive, non-transferable license to make, have made, use, import, offer for sale, sell, and otherwise dispose of DVD Products consisting of, among other things, DVD-ROM and DVD-Video Discs (the "licensed DVD Products").  (License Agreement, Art. 2 & Exhibit 3.)  In exchange, CDI Media agreed to report and pay royalties for DVD-ROM and DVD-Video Discs sold or otherwise transferred on or after January 1, 2001 at the rate of U.S. $0.06 per disc; and U.S. $0.05 per disc sold or otherwise transferred on or after January 1, 2002.  (License Agreement, Exhibit 3, §§ 2.2, 2.3 (as modified by Letter Agreement ¶ 2).)

10.     CDI Media agreed to report such royalties on a semiannual basis, within forty-five (45) days after the semiannual periods ending June 30 and December 31 each year, and to pay all royalties due for such periods within ninety (90) days after the end of such semiannual periods.  (License Agreement, Exhibit 3, § 2.6.)  CDI Media further agreed to pay interest at the rate of two percent (2%) per month for any payments not made on the date due.  (License Agreement, Exhibit 3, § 2.7.)

11.     Toshiba and CDI Media further agreed that the License Agreement "shall be governed and construed according to the laws of New York, as if [the] Agreement were wholly

executed and wholly performed within New York, and without reference to the conflicts of laws principles thereof."  (License Agreement, § 6.3.)

12.     Under Section 5.1 of the License Agreement, Toshiba and CDI Media agreed that the License Agreement would renew automatically unless timely terminated:

> 5.1     This Agreement shall become effective as of the Effective Date and shall continue in force until December 31, 2007, unless earlier terminated pursuant to the terms hereof, and shall be automatically renewed for additional five (5) year terms unless Licensee notifies Licensor in writing of its intent to terminate this Agreement at least sixty (60) days prior to the date specified above or the expiration date of such renewed periods, as the case may be.

(License Agreement, § 5.1.)

13.     CDI Media did not notify Toshiba of its intent to terminate the License Agreement at any time prior to December 31, 2007.  Thus, pursuant to the express terms of Section 5.1, the License Agreement automatically renewed for a five-year term on December 31, 2007.

14.     CDI Media did not notify Toshiba of its intent to terminate the License Agreement at any time prior to December 31, 2012.  Thus, pursuant to the express terms of Section 5.1, the License Agreement automatically renewed for a five-year term on December 31, 2012.

***CDI Media Fails to Report and Pay Royalties Due Under the License Agreement***

15.     Upon information and belief, CDI Media has made and sold or otherwise transferred the licensed DVD Products covered by the terms of the License Agreement during the entire period from April 1, 2003 through the filing of this Complaint.

16.     CDI Media has never satisfied its obligation under the License Agreement to report its sales of licensed DVD Products.  Although CDI Media agreed to report the royalties owed under the License Agreement on a semiannual basis within forty-five (45) days after June

30 and December 31 of each year, CDI Media has not submitted any royalty report for any semiannual period from the first half of 2003 through the first half of 2013.

17.     CDI Media has entirely failed to satisfy its obligation to pay royalties under the License Agreement.  It has not paid any royalties based on its sales or transfers of licensed DVD Products since the License Agreement became effective on April 1, 2003.

18.     Under the express terms of the License Agreement, all royalty payments that are not made by the due date specified in the License Agreement accrue interest at the rate of two percent (2%) per month.  CDI Media thus owes interest at the rate of two percent (2%) per month for each unpaid royalty payment associated with one of the semiannual periods from the first half of 2003 through the first half of 2013.  The two percent (2%) interest on each such unpaid royalty payment began to accrue as of 90 days after the end of each such semiannual period, and continues to accrue.

19.     Upon information and belief, the total amount of unpaid royalties that CDI Media owes to Toshiba under the terms of the License Agreement is well in excess of one million dollars.

20.     From October 2004 and continuing through March 2013, both Toshiba and Panasonic Corporation, the DVD Patent Licensing Group Regional Contact, sent CDI Media notices reminding it of its obligation to report and pay royalties due under the License Agreement.  CDI Media did not dispute any of these notices.

21.     By letter from counsel dated May 1, 2013, CDI Media for the first time asserted that the License Agreement had been terminated, abandoned, and/or never renewed.  This assertion is contrary to Section 5.1 of the License Agreement, which expressly requires that CDI Media provide written notice of its intent to terminate the License Agreement at least sixty (60)

days prior to an automatic renewal date.

22.     CDI Media has never provided Toshiba with written notice of its intent to terminate the License Agreement.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

23.     Toshiba repeats and re-alleges the allegations of paragraphs 1 through 11.

24.     The License Agreement is a valid, binding and enforceable contract.

25.     CDI Media has breached the License Agreement by failing to report the royalties due for licensed DVD Products sold or otherwise transferred during the period from the first half of 2003 through the first half of 2013.

26.     CDI Media has further breached the License Agreement by failing to pay any royalties due for licensed DVD Products sold or otherwise transferred during the period from the first half of 2003 through the first half of 2013.

27.     CDI Media's ongoing failure to report and pay royalties due for the current and future semiannual periods constitutes further and continuing breaches of the License Agreement.

28.     CDI Media's breaches of the License Agreement have damaged, and continue to damage, Toshiba in an amount to be determined, but on information and belief substantially exceeding one million dollars, plus interest at the contracted rate of two percent (2%) per month since the pertinent payments became due.

## PRAYER FOR RELIEF

WHEREFORE, Toshiba prays that this Court enter judgment for Toshiba and against CDI Media:

a.      awarding to Toshiba money damages in an amount to be determined, on information and belief not less than one million dollars, in unpaid royalties due under the License

Agreement for licensed DVD Products that CDI Media has sold or otherwise transferred between April 1, 2003 through the date of judgment;

        b.      awarding to Toshiba interest at the contracted rate of two percent (2%) per month since the pertinent payments were due, as required under the License Agreement, on the amount awarded under the preceding paragraph;

        c.      awarding to Toshiba specific performance requiring CDI Media to submit royalty reports for licensed DVD Products that it has sold or otherwise transferred for the semiannual periods from the first half of 2003 to the date of judgment;

        d.      awarding to Toshiba specific performance requiring CDI Media to submit all royalty reports and pay all royalties due under the License Agreement, and to comply fully with the terms of the License Agreement, on an ongoing basis in the future;

        e.      awarding to Toshiba all reasonable costs and expenses incurred in this action, including administrative fees and reasonable attorneys' fees and costs; and

        f.      granting Toshiba such other and further relief as the Court may deem just and proper.

Dated: New York, New York  
       September 24, 2013

QUINN EMANUEL URQUHART  
  & SULLIVAN, LLP

By: _____  
    Carey R. Ramos  
    (careyramos@quinnemanuel.com)  
    Rachel E. Epstein  
    (rachelepstein@quinnemanuel.com)  
    51 Madison Ave., 22nd Floor  
    New York, New York 10010  
    Tel.: (212) 849-7000  
    Fax:  (212) 849-7100

    *Attorneys for Plaintiff Toshiba Corporation*

# EXHIBIT A

2002/6/20R

# DVD PATENT LICENSE AGREEMENT

This DVD PATENT LICENSE AGREEMENT is made between Toshiba Corporation ("Licensor"), a Japanese corporation having its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan, under authorization of the members of the DVD Patent Licensing Group (or "Group", as listed in Exhibit 1 hereto, as may be amended from time to time by Licensor), and CDI Media, Inc. ("Licensee"), a Utah corporation having its principal place of business at 2323 South 3600 West , Salt Lake City, UT 84119, USA, and is effective as of April 1, 2003 (the "Effective Date").

WHEREAS, members of the Group have been engaged in the research and development of systems in which data encoded in digital form and stored on a disc are read and outputted (whether as data or signals) by means of devices using an optical read-out beam (such systems, the "DVD Systems"); and

WHEREAS, members of the Group and others have defined standards for the DVD Systems, including standards for the production and use of DVD products constituting the DVD Systems and providing for the interoperability of such DVD products; and

WHEREAS, members of the Group own valuable patents (and patent applications) that are Essential (hereinafter defined) to make, use and sell DVD Products (as defined in Exhibit 3 hereto), as listed in Exhibit 2 hereto (the "DVD Patents," as more specifically defined in Exhibit 3 hereto); and

WHEREAS, members of the Group believe that a non-exclusive joint licensing program, under which licensees can obtain access to as many Essential patents as possible in one transaction, is an efficient method for licensing DVD Patents for the benefit of licensees and the public, and have granted Licensor the right to grant such licenses with respect to the DVD Patents on their behalf to licensees that wish to make, use or sell DVD Products; and

WHEREAS, Licensee wishes to obtain a license under the DVD Patents to make, use and sell the DVD Products;

NOW, THEREFORE, the parties agree as follows:

## Article 1
## Additional Terms

1.1     In addition to the terms set forth herein, this Agreement shall include as terms the DVD Patent License Conditions (the "Conditions"), as set forth in Exhibit 3 hereto.  Terms not defined herein shall have the meaning ascribed to them in the Conditions, and vice versa.

1.2     Royalties payable by Licensee hereunder are specified in the Conditions.

## Article 2
## DVD Patent License and Release

2.1     Licensor hereby grants to Licensee and its Affiliates a non-exclusive, non-transferable license to make, have made, use, sell, and otherwise dispose of DVD Products under the DVD Patents or any of their claims pursuant to the Conditions of Exhibit 3.

2.1.A   DVD Players and DVD Decoders (as defined in Article 1 of Exhibit 3) on which applicable royalties are paid pursuant to paragraph 2.4 of Exhibit 3 are licensed for use only with DVD Discs for which royalties have been paid pursuant to paragraph 2.3 of Exhibit 3. DVD Discs on which applicable royalties are paid pursuant to paragraph 2.3 of Exhibit 3 are licensed for use only with DVD Players and DVD Decoders for which royalties have been paid pursuant to paragraph 2.4 of Exhibit 3.

2.2     Licensor hereby releases Licensee and its Affiliates and their customers from any and all claims of infringement of the DVD Patents arising from Licensee's or its Affiliates' manufacture, use, sale, or disposal by other means of DVD Products for the period prior to the Effective Date of this Agreement pursuant to the Conditions of Exhibit 3.

2.3   Instead of dealing with Licensor to obtain licenses for DVD Patents of the members of the Group, Licensee shall have the option to negotiate and take a license under any DVD Patents and other related patents owned by each member of the Group pursuant to separate negotiations with each of the members on fair, reasonable and non-discriminatory terms, whether or not Licensee intends to manufacture and/or sell DVD Products in conformity with the DVD Standard Specifications.

2.4   IT IS EXPRESSLY UNDERSTOOD THAT THE RIGHTS AND LICENSES GRANTED PURSUANT TO THIS AGREEMENT DO NOT EXTEND TO ANY PRESENT OR FUTURE RIGHTS WHATSOEVER TO USE THE DVD FORMAT BOOKS OR DVD LOGOS.

### Article 3
### License Back

3.1   Licensee hereby agrees to grant to each member of the Group and its Affiliates and each of the other licensees of Licensor under the DVD Patents, a non-exclusive license to and release from any and all claims of infringement of any patents that are or become Essential to make, use, or sell DVD Products and with respect to which Licensee has or may in the future obtain rights to grant such a license.   Any such licenses and releases shall be granted upon fair, reasonable, and non-discriminatory terms.

3.2   Licensor shall have the right to terminate the license granted herein under any of the DVD Patents owned by any member of the Group in the event that Licensee has brought a claim(s) that any DVD Product made, used or sold by any member of the Group infringes any patent(s) that are Essential to make, use, or sell DVD Products in a lawsuit or other proceeding against the member of the Group, and Licensee has refused to grant such member of the Group a license on fair and reasonable terms and conditions under such patents upon which the lawsuit or other proceeding is based for the manufacture, use or sale of DVD Products.   In the event that any dispute arises between Licensee and Licensor or any other member of the Group as to determination of the fair and reasonable terms and conditions and cannot be settled between the parties, the dispute shall be submitted to and determined by an expert jointly appointed and paid by Licensee and Licensor or the other member of the Group.

## Article 4
## Warranty and Disclaimer

4.1    THE GROUP, LICENSOR AND MEMBERS OF THE GROUP MAKE NO REPRESENTATION OR WARRANTY AS TO THE VALUE OR UTILITY OF THE DVD PATENTS, OR THE ABILITY OF LICENSEE TO MAKE USE THEREOF OR TO SECURE INTERCHANGEABILITY WITH OTHER DVD PRODUCTS.  THE GROUP, LICENSOR AND THE MEMBERS OF THE GROUP MAKE NO WARRANTY WITH RESPECT TO THE VALIDITY OF THE DVD PATENTS, NOR DO THEY WARRANT THAT LICENSEE'S MANUFACTURE, USE, SALE, LEASE OR OTHER DISPOSITION OF DVD PRODUCTS WILL NOT CAUSE INFRINGEMENT OF ANY PROPERTY RIGHT OWNED OR CONTROLLED BY ANY PERSON, EXCEPT THAT LICENSOR WARRANTS THAT IT HAS BEEN AUTHORIZED BY THE MEMBERS OF THE GROUP TO GRANT SUCH RIGHTS WITH RESPECT TO THE DVD PATENTS AS ARE SPECIFI-CALLY SET FORTH HEREIN. THE GROUP, LICENSOR AND MEMBERS MAKE NO OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING THOSE OF MERCHANTABILITY, FITNESS FOR A PATICULAR PURPOSE, OR NON-INFRINGEMENT. THE LICENSES GRANTED HEREIN ARE PROVIDED "AS IS."

4.2    Licensee covenants that, at Licensor's request, it shall place appropriate patent markings on an exposed surface of the DVD Products made, used, sold and/or otherwise disposed of hereunder.  The content, form, location and language used in such markings shall be in accordance with the laws and practices of the country where such markings are used.

## Article 5
## Term and Termination

5.1    This Agreement shall become effective as of the Effective Date and shall continue in force until December 31, 2007, unless earlier terminated pursuant to the terms hereof, and shall be automatically renewed for additional five (5) year terms unless Licensee notifies Licensor in writing of its intent to terminate this Agreement at least sixty (60) days prior to the date specified above or the expiration date of such renewed periods, as the case may be.

5.2    Notwithstanding the provisions of Article 5.1, this Agreement shall expire upon the expiration of the last to expire DVD Patent, if such expiration would occur before the expiration date otherwise provided for in Article 5.1.

5.3    Either party may terminate this Agreement at any time on thirty (30) days' written notice to the other party in the event that the latter shall materially breach or fail to perform any material obligation under this Agreement and such default is not remedied within thirty (30) days after notice is given specifying the nature of the default.    Such right of termination shall not be exclusive of any other remedies or means of redress to which the non-defaulting party may be lawfully entitled, and all such remedies shall be cumulative.

5.4    In the event that any Event of Bankruptcy occurs, then Licensor may give notice to Licensee terminating this Agreement and this Agreement shall be terminated in accordance with the notice.    An "Event of Bankruptcy" occurs if:  (i) a decree or order by a court having jurisdiction in the premises has been entered adjudging Licensee a bankrupt or insolvent, or approving as properly filed a petition seeking reorganization, readjustment, arrangement, composition, winding up or similar relief for Licensee under any applicable statute, or a decree or order of a court having jurisdiction in the premises for the appointment of a liquidator, receiver, administrator, trustee or assignee in bankruptcy or insolvency or other similar person or official of Licensee or of a substantial part of the property, or for the winding up or liquidation of the affairs of Licensee has been entered and remains unstayed; or if any substantial part of the property of Licensee has been sequestered or attached and has not been returned to the possession of Licensee or released from such attachment within 14 days thereafter; whether any such act or event occurs in Japan, or any foreign country, subdivision thereof, or any other jurisdiction; or (ii) Licensee institutes proceedings to be adjudicated a voluntary bankrupt or insolvent, consents to the filing of a bankruptcy or insolvency proceeding against it, files a petition or answer or consent seeking reorganization, readjustment, arrangement, composition, winding up, administration, receivership, or similar relief under any applicable statute or consents to the filing of any such petition or the entry of any such order, makes an assignment for the benefit of creditors, is determined to be unable to pay its debts or admits in writing its inability to pay its debts generally as they become due, or voluntarily suspends transactions of a substantial portion of its usual business; whether any such act or event occurs in Japan, or any foreign country, subdivision thereof, or any other jurisdiction.

## Article 6
## Miscellaneous

6.1     Except as provided in Article 6.1.1 of this Agreement, in the event that Licensor grants a DVD Patents license to another party with royalty rates more favorable than those set forth in Articles 2.3 and 2.4 of the DVD Patent License Conditions attached hereto as Exhibit 3, whether or not such more favorable royalty rates are on terms and conditions that are different from those set forth herein, Licensor shall send written notice to Licensee specifying the more favorable royalty rates and any terms and conditions that are different from those set forth herein within thirty (30) days of the granting of DVD Patents License providing for such more favorable royalty rates.   Licensee shall be entitled to an amendment of this Agreement to the extent of providing for royalty rates as favorable as those available to such other party within thirty (30) days of receipt of such written notice from Licensor by sending written notice to Licensor requesting such amendment; provided, however, that this Agreement shall also be amended to include any additional benefits to Licensor that may be included among the terms and conditions corresponding to such royalty rates.   Any amendment made pursuant to this Article 6.1 shall be effective as of the date it is made, and such more favorable royalty rates shall not be retroactively applicable in favor of Licensee, and shall not be a basis for claiming any refund of royalties paid prior to such effective date.

6.1.1.  Article 6.1 shall not apply to:

6.1.1.1   Settlement of litigation;

6.1.1.2   Determination by Licensor of back royalties owed by a Licensee;

6.1.1.3   Compromise or settlement of royalty payments owed by a Licensee in financial distress;

6.1.1.4   Individual patent licenses or sublicenses granted by an individual member of the Group to a third party; and

6.1.1.5   An order of a court or an administrative body.

6.2     This Agreement and the rights granted hereunder shall be personal to Licensee and shall not be assignable, except to an Affiliate, the survivor of a merger with Licensee, or the acquiror of all or substantially all of Licensee's assets.  Licensee's right to sublicense any rights granted hereunder shall be limited solely to the right to have a third party manufacture for Licensee DVD Products.  Licensee shall, in all such cases, ensure that the third party undertakes to be bound by all of the terms of this Agreement.  Licensee shall be solely responsible for ensuring such third party's compliance with the terms hereof.

6.3     This Agreement shall be governed and construed according to the laws of New York, as if this Agreement were wholly executed and wholly performed within New York, and without reference to the conflicts of laws principles thereof.

6.4     All disputes between the parties hereto arising out of or in connection with the interpretation or execution of this Agreement shall be finally settled by the competent courts of federal or state courts located in the county of New York in the state of New York, and each of the parties to this Agreement hereby submits to the jurisdiction of such courts for the resolution of such disputes and waives any objection that it may now or hereafter have to the venue of any such action or proceeding in such courts or to the convenience or inconvenience of conducting or pursuing any action or proceeding in any such court.

6.5     This Agreement shall inure to the benefit of the parties hereto and each of their respective Affiliates and permitted assigns, provided that (i) such Affiliates shall comply with the terms of this Agreement, (ii) nothing herein shall relieve any party of any of its obligations under the terms of this Agreement; and (iii) a party shall be responsible for the acts and omissions of its Affiliates as if such acts and omissions had been the acts and omissions of such party.

6.6     Any notice or request with reference to this Agreement shall be made by letter or facsimile, and shall be directed by one party to the other at its respective address as follows:

In the case of Licensor to:

Yoshitaka Honda
General Manager, License Management
Toshiba DVD License Services, Inc.
5th Floor, Sumitomo-Hamamatsucho Bldg.,
18-16, Hamamatsucho 1-chome, Minato-ku,
Tokyo 105-0013, Japan
TEL: +81-3-5777-3286
FAX: +81-3-5401-2503
E-mail: yoshitaka.honda@toshiba-tdls.co.jp

In the case of Licensee to:

Allen G. Webb
VP/CFO
CDI Media, Inc.
2323 South 3600 West
Salt Lake City, UT 84119
U.S.A.
TEL: +1- (801) 977-0077
FAX: +1- (801) 977-3947
E-mail: awebb@cdimedia.com

or to such other address(es) as either party may from time to time designate as its address by notice in writing to the other.  All notices so addressed are effective when received.

6.7     This Agreement sets forth the entire agreement and understanding between the parties as to the subject matter hereof and merges all prior discussions between them and neither of the parties shall be bound by any conditions, definitions, warranties, waivers, releases or representations (either expressed or implied) with respect to the subject matter of this Agreement, other than expressly provided for herein (including the exhibits hereto), or as duly set forth on or subsequent to the date hereof in writing signed by a duly authorized representative of the party to be bound thereby.

6.8   Under no circumstances shall the Group, Licensor or members of the Group be liable to Licensee for any special, incidental, punitive or indirect damages or for any economic consequential damages (including lost profits, revenues and savings), even if advised in advance of the possibility of such damages. In addition, in no event shall the Group, Licensor, or members of the Group be liable for any third party claim against Licensee.


IN WITNESS WHEREOF, the parties have executed this Agreement by their duly authorized representatives as of the Effective Date.


TOSHIBA CORPORATION

Licensor

_By (Signature)_

CDI Media, Inc.

Licensee

_By (Signature)_


Kaoru Ichisaka
Name (Print)

General Manager
Strategic Licensing & Alliance Division
Digital Media Network Company
Title

May 22, 2003
Date

Allen G. Webb
Name (Print)

VP/CFO
Title

May 12, 2003
Date

## **Exhibit 1**

DVD Patent Licensing Group members include:

Hitachi, Ltd.
International Business Machines Corporation
Matsushita Electric Industrial Co., Ltd.
Mitsubishi Electric Corporation
Time Warner Inc.
Toshiba Corporation
Victor Company of Japan, Ltd.

11

**<u>Exhibit 2</u>**

[List of DVD Patents]

[Exhibit 2 020702ED]

**Exhibit 3**

**DVD PATENT LICENSE CONDITIONS**

**Article 1**
**Definitions**

1.1   **"Agreement"** shall mean the DVD Patent License Agreement to which these Conditions are Exhibit 3.

1.2   **"DVD Standard Specifications"** shall mean the specifications of the DVD Systems as agreed upon by the Group and others and as specified in the document DVD Specifications for Read Only Disc version 1.0 of August 1996 and its respective revisions or successive modified, amended or extended versions thereof, as may be issued by the Group and others from time to time for DVD Products.

1.3   **"DVD Patents"** shall mean all patents owned by members of the Group, now, or hereafter during the term of this Agreement, that are Essential to make, use or sell DVD Products. Such DVD Patents shall not include patents related to "CSS" or "Content Scramble System" which is designed to provide reasonable protection for the contents of DVD discs or MPEG-2 data compression patents that may be applicable to DVD Systems. The currently issued DVD Patents are listed in Exhibit 2, which Exhibit 2 may be amended from time to time by Licensor to incorporate DVD Patents issued during the term of this Agreement.

1.4   **"Essential"** with respect to the definition of DVD Patents shall mean necessarily infringed when implementing the DVD Standard Specifications or claiming technologies for which there is no realistic alternative in implementing the DVD Standard Specifications.

1.5   **"DVD-Video Disc/DVD-ROM Disc"** (collectively, "DVD Discs") shall mean any replicated disc comprising any kind of information such as, but not limited to, audio, video, text, and data-related information, encoded in digital form, that is optically readable by a DVD Player, that conforms to the DVD Standard Specifications and that practices a DVD Patent or with respect to which use or manufacture thereof practices a DVD Patent.

1.6   **"DVD-Video Player/DVD-ROM Drive"** (collectively, "DVD Players") shall mean a playback device conforming to the DVD Standard Specifications that is specifically designed and manufactured for the reproduction of information stored on a DVD Disc and conversion of such information into

electrical signals, which electrical signals are directly capable and intended to be used for visual reproduction through standard television receivers or television monitors or for reproduction of video, text, audio and data-related information through data handling or data processing apparatus, and that practices a DVD Patent or with respect to which use or manufacture thereof practices a DVD Patent.

1.7   **"DVD Decoder"** shall mean a decoder implemented in hardware or software capable of receiving and decoding transmissions from a DVD-ROM Drive over a computer system bus and that conforms to the DVD Standard Specifications and practices a DVD Patent or with respect to which use or manufacture thereof practices a DVD Patent.

1.8   **"DVD Product"** shall mean a DVD Player, DVD Disc or a DVD Decoder.

1.9   **"Affiliate"** shall mean, with respect to either party hereto, any corporation, firm, partnership, proprietorship, or other form of business entity, in whatever country organized or resident, directly or indirectly controlled by such party.  For the purpose of this definition, "control" shall mean the power to direct or cause the direction of the management or policies of such entity, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise.

## Article 2
## Payment

2.1   In consideration of the releases granted under Article 2.2 of this DVD Patent License Agreement, Licensee shall pay to Licensor, within thirty (30) days after the Effective Date of this Agreement, US$_____, which shall be calculated by applying the royalty rates specified in Article 2.3 for DVD Discs and Article 2.4 for DVD Players and DVD Decoders to the number of DVD Products sold by Licensee and its Affiliates prior to the Effective Date of this Agreement.

2.2   Licensee shall be obligated to pay royalties to Licensor on all DVD Products it and its Affiliates sell or otherwise transfer.  Royalties shall accrue and be payable as follows:

2.3     With respect to DVD Discs, the royalty payable shall be US $0.075 per disc sold or otherwise transferred, as may be applicable. Notwithstanding the foregoing, the royalty shall be US$0.065 per disc sold or otherwise transferred on or after January 1, 2002, US$0.05 per disc sold or otherwise transferred on or after January 1, 2004. The royalty shall accrue when the disc is invoiced, or if not invoiced, when ownership or possession is transferred to another party.

2.3.1   All royalties payable with respect to DVD Discs shall be paid to Licensor in US dollars.

2.4     With respect to DVD Players, the royalty payable shall be 4% of the Net Selling Price (hereinafter defined) of the DVD Player, or US$4.00 per DVD Player, whichever is greater.  With respect to DVD Decoders, the royalty payable shall be 4% of the Net Selling Price of the DVD Decoder, or US$1.00 per DVD Decoder, whichever is greater.  The royalty shall accrue when a DVD Player or DVD Decoder is invoiced, or if not invoiced, when ownership or possession is transferred to another party.

2.4.1   With respect to DVD Products sold by Licensee or its Affiliates to any third party in arm's length trade, Net Selling Price shall mean gross sales price less normal discounts actually granted, insurance fees and packing and transportation charges as invoiced to customers, and duties and sales taxes actually incurred and paid by Licensee or its Affiliates in connection with the delivery of such DVD Products.

2.4.2   With respect to DVD Products sold by Licensee or its Affiliates to customers who do not deal at arm's length with Licensee or its Affiliates, Net Selling Price shall mean the average Net Selling Price of the prior three (3) months as defined above for similar DVD Products sold at arm's length trade with third party customers.

2.4.3   All royalties payable with respect to DVD Players and DVD Decoders shall be accrued and paid to Licensor in the currency reasonably determined by Licensor, after advance consultation with Licensee.

2.4.4   If a DVD-ROM Drive or DVD Decoder is incorporated into a subsequently manufactured personal computer, then a royalty shall be due on such DVD-ROM Drive or DVD Decoder only and not on the personal computer.  If both a DVD-ROM Drive and a DVD Decoder are

incorporated into a subsequently manufactured personal computer, a royalty shall be due on both the DVD-ROM Drive and the DVD-Decoder.

2.4.5   Royalties are due only on (i) DVD Players (including, without limitation, DVD-ROM Drives), DVD Decoders and DVD Discs that are ready to be used by the consumer without any further manufacturing, and (ii) DVD-ROM Drives and DVD Decoders that are incorporated into personal computers by subsequent manufacturers, (collectively, (i) and (ii), "Ready-To-Use Products").  A first manufacturer shall pay a royalty on Ready-to-Use Products that are then sold to a second manufacturer for incorporation into a personal computer.  The second manufacturer shall be relieved from paying any royalty beyond that due from and paid by the first manufacturer on the product.

2.4.6   With respect to combination DVD Products, the royalty payable for a single product (a) into which a DVD Player is incorporated by Licensee or Licensee's Affiliates and (b) which consists of such DVD Player and one (1) or more non-DVD Player product(s) or component(s) ("Non-DVD Player Product") (each such single product, a "Combination Product") shall be the greater of (a) US $4.00 or (b) 4% of the amount calculated under sub-clause (1) or (2) below:

   (1) in the event that a DVD Player incorporated into a Combination Product is substantially similar to a DVD Player that Licensee or Licensee's Affiliates manufacture and sell independently of the Combination Product, the Net Selling Price of such independently sold, substantially similar DVD Player; or
   (2) in the event that sub-clause (1) does not apply, the product of the following formula:

   $$\text{NSP} \times [A + C \times \{A / (A + B)\}] / (A+B+C)$$

   where
   $A =$ the material cost of a DVD Player incorporated in a Combination Product;
   $B =$ the material cost of a Non-DVD Player Product incorporated in such Combination Product;
   $C =$ the material cost of the portion of such Combination Product that is common to such DVD Player and such Non-DVD Player Product, including, without limitation, the power supply and cabinet; and

NSP = the Net Selling Price of such Combination Product.

2.5   Upon termination of this Agreement, royalties shall be due and payable with respect to all DVD Products made by, or made for, Licensee but not yet sold or transferred.

2.6   Within forty-five (45) days after June 30 and December 31 of each year during the period this Agreement shall be in force and effect, Licensee hereby undertakes to submit to Licensor, even if it makes no sales of DVD Products, a statement in writing setting forth with respect to the preceding semi-annual period:

(1)   The quantities of DVD Products manufactured (or manufactured for) and sold by Licensee and its Affiliates, for each product type of DVD Products in the case of DVD Players and DVD Decoders sold; and

(2)   the trademarks or trade names used on or in connection with the DVD Products sold, if any; and

(3)   a computation of the royalties due under this Agreement.

Licensee shall pay Licensor in the manner and to the account Licensor may indicate, and within ninety (90) days after the end of each semi-annual period, the royalty due hereunder.  All royalties shall be calculated and paid, exclusive of any taxes or other levies (except withholding taxes imposed by the governing body of Licensee's domicile), which shall be borne by Licensee.  With respect to withholding taxes imposed by the governing body of Licensee's domicile, Licensee shall pay such taxes and shall be entitled to deduct such taxes from royalties paid, so long as Licensee provides Licensor with a tax certificate (or equivalent document) evidencing such payment and/or obligation.  Licensee covenants to pay such taxes in a timely and lawful manner.

2.7   All payments which are not made on the due date specified in this Agreement shall accrue interest at the rate of two percent (2%) per month.

2.8   Licensee agrees to keep accurate books with respect to sales, other transfers, and royalties, and to permit Licensor to audit those books no more than once annually.  Such audits may cover the three year period preceding the audit.  Such audits shall be conducted by an independent auditor hired by Licensor,

and the costs thereof shall be borne by Licensor, except that if any such audit should reveal an underpayment of royalties due hereunder of greater than 3% for any period audited, Licensee shall bear the costs of such audit, as well as pay the discrepancy.

### Article 3
### Limitation on License Grant

Notwithstanding anything to the contrary in Section 2.1 of this Agreement or any other provision of this Agreement or of the Exhibits to this Agreement, no licenses are granted under this Agreement for the sale, or other disposition of either (a) DVD Products that are not Ready-to-Use Products or (b) DVD-ROM Drives or DVD-Decoders that will ultimately be incorporated into DVD-Products other than personal computers.  DVD-ROM Drives or DVD-Decoders that will ultimately be incorporated into DVD-Products other than personal computers shall only be manufactured subject to licenses granted to the manufacturers of such DVD Products (including, as applicable, subject to such manufacturers' "have made" rights under such licenses); therefore the royalty shall be due on such subsequently manufactured DVD Product.  If, for any reason, a royalty is paid for such a DVD-ROM Drive or DVD-Decoder, the manufacturer of such subsequently manufactured DVD Product shall be entitled to subtract a credit for any royalty already paid (and not refunded) on such DVD-ROM Drive or DVD-Decoder.

### Article 4
### Confidentiality

Licensee and Licensee's Affiliates and Licensor agree that the royalty reports required under Article 2.6 of this Exhibit 3, including competitively sensitive information such as sales volume and selling prices of particular models of DVD Products contained in such royalty reports, shall be deemed Licensee's "Confidential Information" and shall be sent only to employees of Licensor who are involved in licensing and accounting activities and who are not involved in the business of selling or developing DVD Products. Such Confidential Information shall be kept confidential by said employees and shall not be disclosed by Licensor or its employees to members of the DVD Patent Licensing Group or to third parties to this Agreement. Notwithstanding the foregoing, Licensee agrees that members of the DVD Patent Licensing Group may have access to the information contained in such reports regarding the names of licensees, categories and model numbers of licensed products, total quantities of sales of such products and total royalties due under this Agreement.

# TOSHIBA

**TOSHIBA CORPORATION**  PRINCIPAL OFFICE

DIGITAL MEDIA NETWORK COMPANY
STRATEGIC PARTNERSHIP DIVISION
1-1, SHIBAURA 1-CHOME, MINATO-KU, TOKYO, 105-8001 JAPAN
PHONE: +81-3-3457-2473, FACSIMILE: +81-3-5444-9403

April    , 2003

CDI Media, Inc.
2323 South 3600 West
Salt Lake City, UT 84119
Attn: Mr. Allen G. Webb, VP/CFO

Re:    DVD Patent License Agreement

Dear Mr. Webb:

This letter agreement (the "Letter Agreement") is entered into between CDI Media, Inc. ("Licensee") and Toshiba Corporation ("Licensor"), under authorization of the members of the DVD Patent License Group (as defined in the DVD Patent License Agreement), and will amend and supplement the terms and conditions of the DVD Patent License Agreement entered into by Licensee and Licensor as of April 1, 2003 ("DVD Patent License Agreement").   Unless otherwise specified herein, the terms used herein shall have the meanings defined in the DVD Patent License Agreement.

1.    Article 2.1 of Exhibit 3 to the DVD Patent License Agreement shall be hereby amended and restated in its entirety to read as follows:

"In consideration of the releases granted under Article 2.2 of this DVD Patent License Agreement, Licensee shall pay to Licensor, within thirty (30) days after the signature of this Agreement by Licensee, US$_____, which shall be calculated by applying the royalty rates specified in Article 2.3 to the number of DVD Products sold by Licensee and its Affiliates prior to the Effective Date of this Agreement."

2.    Article 2.3 of Exhibit 3 to the DVD Patent License Agreement shall be hereby amended by adding the following sentences after the first sentence:

"Notwithstanding the foregoing, the royalty shall be US$0.06 per disc sold or otherwise transferred on or after January 1, 2001, and US$0.05 per DVD Disc sold or otherwise transferred on or after January 1, 2002."

3.    Except as modified herein, the terms of DVD Patent License Agreement shall remain in full force and effect as provided therein.   In the event of any conflict between the terms of this Letter Agreement and the DVD Patent License Agreement, the terms of this Letter Agreement shall take precedence.

Please confirm your acceptance of the terms of this Letter Agreement by countersigning below.

Very truly yours,

Kaoru Ichisaka, General Manager
Strategic Licensing & Alliance Division
Digital Media Network Company

Agreed and Accepted:

CDI Media, Inc.

By:    Allen G. Webb

Title:    VP/CFO

Date:    5/12/03

2