UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

TOSHIBA CORPORATION,

           Plaintiff,

- against -

CDI MEDIA, INC.,

           Defendant.

------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/19/14

**MEMORANDUM OPINION
AND ORDER**

13 Civ. 6760 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. INTRODUCTION

        Toshiba Corporation ("Toshiba") brings this breach of contract action against CDI Media, Inc. ("CDI") in connection with a 2003 Licensing Agreement which granted CDI a non-exclusive license to make, use and sell DVD products utilizing various patents owned by the DVD Patent Licensing Group (the "Group"), of which Toshiba is a member and authorized licensor.[1] On January 31, 2014, Toshiba moved for summary judgment. On February 7, 2014, CDI

---

[1] *See* Licensing Agreement, Exhibit ("Ex.") 1 to 1/31/14 Declaration of Naoto Tsushima, Group Manger of the Licensing Operations Group, Intellectual Property Division, of the Digital Products & Services Company of Toshiba Corporation ("Tsushima Decl.").

1

submitted a pre-motion conference letter seeking additional discovery on five topics pursuant to Federal Rule of Civil Procedure 56(d).[2] For the following reasons, CDI's request is DENIED.

## II. CDI'S REQUESTS

### A. Contract Termination by Toshiba

CDI claims that it "is aware of one letter sent by Toshiba to a CDI customer stating that CDI was no longer a licensee of Toshiba."[3] The letter, dated November 27, 2011, is from Koichiro Endo, a regional contact for Panasonic, to Mac Christianson, President of the Mormon Tabernacle Choir. This letter includes a list of licensees in North America and the list does not include CDI. CDI also cites a July 22, 2008 email from Tatsuta Ii, also a representative of Panasonic,[4] to CDI. The July 22, 2008 email warns CDI that it will be "de-list[ed]" from the

---

[2] I accept the 2/7/14 letter as a Rule 56(d) motion and affidavit.

[3] 2/7/14 Letter from Royce Covington, Counsel for CDI, to the Court ("Covington Ltr."), at 1.

[4] At the time of this email, Ii was a representative of Matsushita Electric Industrial Co. Ltd. ("Matsushita"). I take judicial notice of the fact that Matsushita changed its name to Panasonic on October 1, 2008. *See* 10/1/08 Press Release, *Matsushita Electric Becomes Panasonic Corporation, available at* http://panasonic.co.jp/corp/news/official.data/data.dir/en081001-4/en081001-4.html.

2

Group's public licensee list as a result of its failure to pay royalties and fees.[5] Toshiba's response is simple. *First*, both emails are from Panasonic and cannot bind Toshiba even though Panasonic was a member and regional representative of the Group. *Second*, neither letter is a valid termination notice as required by the Licensing Agreement. Finally, the public licensee list, including the list circulated to potential customers, includes only licensees in good standing. Toshiba argues that the fact that CDI was not on the 2011 list merely indicates that it was not in good standing, not that the Licensing Agreement was invalid or terminated.[6]

Toshiba and CDI are the only parties to the Licensing Agreement. Section 5.1 of the Licensing Agreement states that it shall expire on December 31, 2007, but will automatically renew unless either party provides written notice of a desire to terminate at least sixty days prior to the expiration date. Section 5.3 of the Licensing Agreement states, in relevant part,

> Either party may terminate this Agreement at any time on thirty (30) days' written notice to the other party in the event that the latter shall materially breach or fail to perform any material obligation under this Agreement and such default is not remedied within thirty (30) days after notice is given specifying the nature

---

[5] 7/22/08 Email from Ii to Allen Webb, CEO of CDI, Ex. 28 to Tsushima Decl.

[6] *See* 2/11/14 Letter from Carey Ramos, Counsel for Toshiba, to the Court ("2/11/14 Ramos Ltr.") at 2, Transcript of 2/13/14 Conference ("Tr."), at 6-11; 2/13/14 Letter from Ramos to the Court ("2/13/14 Ramos Ltr."), at 1.

of the default.

Although Panasonic is a member of the Group, it does not have the authority to terminate the Licensing Agreement. Further, CDI mischaracterizes the substance of both letters because neither indicates Toshiba has terminated the Licensing Agreement, but simply that the Group no longer includes CDI on the public licensee list.

### B.    Toshiba's "Delay" in Seeking to Enforce the License

CDI asserts that "Toshiba waited more than a decade before initiating the instant lawsuit, and has never provided any explanation for the delay."[7] Toshiba admits that the first alleged breach occurred in 2004, but claims that "laches is not a defense to a contract action for damages" when the case is brought within the statute of limitations period and the party does not seek damages extending past that period.[8] CDI argues that adopting Toshiba's theory would conflate the laches defense and the statute of limitations and allow a party to sit on a claim for decades after the initial breach as long as it only seeks damages for the statutory period.[9]

---

[7]    Covington Ltr. at 2.

[8]    2/11/14 Ramos Ltr. at 3.

[9]    *See* Tr. at 17-18.

I need not reach this issue now,[10] because CDI is not entitled to additional discovery on this issue for other reasons. To establish a laches defense under Second Circuit law, a defendant must show "(1) that he lacked knowledge that the claim might be asserted against him; (2) that the plaintiff delayed asserting the claim despite the opportunity to do so; and (3) that he would be prejudiced if the claim were now allowed to go forward."[11] CDI cannot credibly argue that it "lacked knowledge that the claim might be asserted" given the Group's repeated efforts to collect fees and royalties throughout this time period, including the July 22, 2008 email that CDI has cited. Nor has CDI credibly argued that it has been prejudiced by any delay.

## C. Pre-Contract Representations

CDI claims that it entered into the Licensing Agreement "in reliance on representations made by Toshiba, including that it was active in

---

[10] It is true that "[a]s a general matter, laches is not a defense to an action filed within the applicable statute of limitations." *Amalgamated Lithographers of Am. v. Unz & Co. Inc.*, 670 F. Supp. 2d 214, 228 (S.D.N.Y. 2009). But whether a laches defense is always foreclosed in these cases is not as settled an issue as Toshiba claims. For example, the Supreme Court is currently resolving a circuit split as to whether a laches defense is available for civil copyright infringement claims brought within the statutory limitations period where plaintiff seeks damages only for that period. *See Petrella v. Metro-Goldwyn-Mayer*, No. 12-1315.

[11] *In re Gucci*, 197 Fed. Appx. 58, 60 (2d Cir. 2006) (citing *Rapf v. Suffolk County*, 755 F.2d 282, 292 (2d Cir. 1985)).

leveling the playing field for all duplicators by aggressively enforcing patents and license terms."[12] Section 6.7 of the Licensing Agreement states

> This Agreement sets forth the entire agreement and understanding between the parties as to the subject matter hereof and merges all prior discussions between them and neither of the parties shall be bound by any conditions, definitions, warranties, waivers, releases or representations (either expressed or implied) with respect to the subject matter of this Agreement, other than expressly provided for herein (including the exhibits hereto), or as duly set forth on or subsequent to the date hereof in writing signed by a duly authorized representative of the party to be bound thereby.

Because this is a valid integration clause, all prior representations, whether or not CDI relied on them, are irrelevant and do not warrant additional discovery.

### D. Notices of Favorable Royalty Rates

CDI claims that Toshiba failed to provide written notice of reduced rate licenses in violation of Section 6.1 of the Licensing Agreement.[13] Toshiba contends that it sent CDI, and its other licensees, three letters offering reduced rate licenses – in 2005, 2008 and 2011.[14]

---

[12]    Covington Ltr. at 2.

[13]    *See id.* at 2-3.

[14]    *See* 2/13/14 Ramos Ltr. at 1.

Toshiba has provided a mailing receipt for the 2011 letter and has submitted copies of the 2005 and 2008 letters. While "[i]t was not immediately able to locate receipts for the prior mailings, [Toshiba] is certain based on its regular business practice that they were sent" by Japanese Express Mail Service.[15] CDI claims that it only received one of these letters. Toshiba has sufficiently established that the offer letters were sent to CDI. Additional discovery is not warranted.

### E.  Legality of the License

Finally, CDI seeks discovery on the Group's "anti-competitive" conduct, arguing that its licenses may be "suspect, and where a license or contract violates federal law, it is unenforceable."[16] CDI cites allegations of anti-competitive conduct made in a lawsuit brought, and eventually dismissed, in the Northern District of California.[17] However, CDI now concedes that the Court cannot consider mere allegations brought in another case.[18]

---

[15]   *Id.*

[16]   Covington Ltr. at 3.

[17]   *See* Tr. at 21.

[18]   *See id.* at 22.

7

CDI also cites a June 10, 1999 opinion letter from the Department of Justice ("DOJ") - Antitrust Division to the Group. CDI claims that "[p]remised entirely upon 'the information and assurances' provided by Toshiba and its 'competitors,' the DOJ crafted a carefully hedged letter that envisaged a patent pooling plan with a term through 2007."[19] According to CDI, the DOJ letter is a "conditional approval" of the patent pooling arrangement and CDI is entitled to discovery as to whether Toshiba "complied with the terms of that letter."[20]

The June 10, 1999 letter is not an approval, conditional or otherwise, of the patent pooling arrangement. Rather, it is an opinion of DOJ's Antitrust Division as to the legality of the Group's submitted proposal. The letter is a favorable opinion letter as to the proposal, but it does not bind Toshiba or the Group to follow the exact measures described in that proposal. Nor does the letter suggest that any deviation from those measures renders the patent pooling plan unlawful or the underlying licenses unenforceable. The letter concludes that DOJ "is not presently inclined to

---

[19] Covington Ltr. at 3 (quoting 6/10/99 Letter from Joel Klein, Assistant Attorney General, to Ramos ("6/10/99 DOJ Ltr."), Ex. 2 to 2/13/14 Letter from Covington to the Court).

[20] Tr. at 22.

initiate antitrust enforcement action against the conduct [the Group] ha[s] described [but] reserves the right to bring an enforcement action in the future if the actual operation of the proposed conduct proves to be anticompetitive in purpose or effect."[21] According to Toshiba, DOJ has never brought such an action.[22] CDI is not entitled to additional discovery on this issue.

For the reasons set forth above, no additional discovery is needed to allow CDI to respond to Toshiba's motion for summary judgment. Accordingly, CDI's response must be filed by March 21, 2014. Toshiba's reply must be filed no later than April 4, 2014.

SO ORDERED:

/s/ Shira A. Scheindlin
Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
February 19, 2014

---

[21] 6/10/99 DOJ Ltr. at 16.

[22] *See* Tr. at 27.

## - Appearances -

**For Plaintiff:**

Carey Ramos, Esq.
Rachel Epstein, Esq.
Quinn Emanuel Urquhart & Sullivan LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000

**For Defendant:**

Royce B. Covington, Esq.
Chad S. Pehrson, Esq.
Terry E. Welch, Esq.
Parr Brown Gee & Loveless
185 S. State Street, Suite 800
Salt Lake City, UT 84111
(801) 532-7840